### In re L. P. LARSON, JR., CO.

### L. P. LARSON, JR., CO. v. WILLIAM WRIGLEY, JR., CO.

(Circuit Court of Appeals, Seventh Circuit. March 31, 1921. Rehearing Denied July 20, 1921.)

Nos. 2822, 2831.

1. **Trade-marks and trade-names and unfair competition ⊂⇒98—Scope of accounting for unfair competition.**

   Where complainant, in a suit for unfair competition, prayed for an accounting for profits only, and not for damages, and the court awarded an injunction, perpetual in time and universal in place, and directed an accounting "of all gains and profits accruing from the manufacture and sale" of defendant's product, the master is without authority to compel complainant to submit to an examination as to the extent of its trade, for the purpose of limiting the inquiry to sales made in common territory.

2. **Appeal and error ⊂⇒1203(7)—Authority of master on an accounting limited by terms of decree.**

   A decree directing an accounting, entered pursuant to the mandate of an appellate court, is in effect the decree of that court, and while it remains in effect the trial court can give the master no different authority.

3. **Trade-marks and trade-names and unfair competition ☞98—Scope of accounting for unfair competition.**

Where the court found that complainant was the originator and had the exclusive right to make and sell a package, and that defendant had willfully trespassed on its right by placing the package of its own manufacture on the market to forestall complainant's trade, and ordered an accounting of profits by defendant, such accounting will not be limited to sales by defendant in complainant's territory.

4. **Appeal and error ☞14(2)—Order relating to carrying out decree entered on mandate is reviewable by appeal.**

While questions arising on an accounting before a master under an interlocutory decree are not reviewable by appeal until the master's report has been disposed of by the trial court, the master has no authority to open questions adjudicated by the decree, and where that was entered on a mandate from the appellate court, the question whether it is being correctly carried into execution may be raised in the appellate court, either by appeal from an order of the trial court or by petition for mandamus.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the L. P. Larson, Jr., Company against the William Wrigley, Jr., Company. From an order of the District Court, complainant appeals, and also petitions for a writ of mandamus. Order reversed, and writ granted.

Charles H. Aldrich and Frank F. Reed, both of Chicago, Ill., for petitioner.

Isaac Mayer and Wallace R. Lane, both of Chicago, Ill., for respondent.

Before BAKER, EVANS, and PAGE, Circuit Judges.

BAKER, Circuit Judge. [1] In Larson Co. v. Wrigley Co., 253 Fed. 914, 166 C. C. A. 14, on appeal from a final decree dismissing Larson Company's cross-bill, we reversed the decree "with the direction to enter an injunction and order an accounting." That decision is referred to for the status of the controversy anteceding the present inquiry.

True, we did not specifically direct what sort of an injunction to enter. Looking to the pleadings, the proofs, and the decision of this court, the District Court entered a final injunction, perpetual in time and universal in place. No appeal was taken to question the correctness of the District Court's interpretation of our mandate in that respect.

True, we did not specifically direct what sort of an accounting to order. Looking to the pleadings, the proofs, the decision of this court, and Larson Company's prayer for profits and its waiver of its prayer for damages, the District Court ordered the master—

"to take an account of all gains and profits of Wrigley Company to it accruing or arising from the manufacture and sale of its Doublemint gum in the dress hereinbefore enjoined, from its first sale on July 28, 1914, to the date of the entry of this decree and such further time, not exceeding ninety days, as may be necessary to comply with this decree, and until compliance therewith."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

No petition or motion has ever been presented to this court to question the correctness of the District Court's interpretation of our mandate in that respect.

While Larson Company before the master was endeavoring to make Wrigley Company account for "all gains and profits accruing from the manufacture and sale of its Doublemint gum," Wrigley Comcompany, relying on the territorial limitation doctrine of the "Tea Rose" case (Hanover Star Milling Co. v. Allen & Wheeler Co., 208 Fed. 513, 125 C. C. A. 515, L. R. A. 1916D, 136; 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713), interposed as a defense against accounting for any of its sales outside of "common territory" the claim that Larson Company was a small manufacturer, had been making and selling its Wintermint gum for only seven months before Wrigley Company embarked upon its Doublemint adventure, had only a very limited trade, and had neither the ability nor the present intention to extend its trade, and Wrigley Company insisted upon examinations of the officers and books of Larson Company in order to prove those matters. A controversy developed between opposing counsel, from which it became apparent that such an investigation might be indefinitely prolonged, and Larson Company, on advice of its counsel, finally refused to submit to further investigation. Thereupon the master ruled that Wrigley Company's investigation of Larson Company's trade, finances. etc., should proceed, and the present actions in this court were brought to question the District Court's refusal to control the master in this regard.

[2] If Larson Company were asking for a measurement of the damages caused by Wrigley Company's undermining of its trade, an inquiry into the extent and value of that trade would be necessary. But Larson Company was actor, was in control of its own side of the litigation, and neither Wrigley Company nor the master nor the District Court, in view of the decree as entered, could properly compel it to litigate the "undermining of its trade"—a matter that it had waived in this court by its briefs and in the District Court by its tender of form of decree. Inasmuch as the decree specifically directs the master to take an account of all of Wrigley Company's gains and profits from the manufacture and sale of Doublemint gum, and submits no other matter for his report, his duty to refrain from excursions should be sufficiently apparent. And since the decree, if truly entered in pursuance of the mandate of this court, is in effect the decree of this court, the master can be given no different authority while the decree remains in force.

Despite the fact that the foregoing paragraph seems to us a complete answer to Wrigley Company's contention, we will examine the question whether the territorial limitation issue has been adjudicated.

[3] We ordered (in effect, though not in direct words) a final injunction, perpetual in time and universal in place, because, on consideration of the pleadings and the evidence, we found that in Wrigley Company's Spearmint suit it had obtained a pendente lite injunction against Larson Company's Peptomint gum by willfully deceiving the

court and had thereby oppressed its opponent; that Larson Company, while its trade was stopped by that wrongful injunction, brought out its Wintermint gum; that before Wintermint trade could be well established Wrigley Company put its Doublemint on the market for the purpose of forestalling Larson Company's growing trade in Wintermint; that Wrigley Company thereupon sued for an injunction against Wintermint on the grounds that Doublemint was the elder product and that the two articles were one and the same in the eyes of the trade; that Larson Company, by answer and counterclaim, agreed with Wrigley Company that the two packages were substantially the same, but asserted that Wintermint was the elder; that Wintermint was in fact the elder; that Wrigley Company, before adopting and bringing out its Doublemint, had knowledge of Larson Company's Wintermint; and that both parties were bound by their sworn pleadings, and Wrigley Company additionally by the testimony of its officers, to the fact that the two articles were one and the same in the eyes of the trade.

Looking to Larson Company's legal rights flowing from these adjudicated issues of fact, we found Larson Company entitled in law and equity to a perpetual and universal injunction against Wrigley Company's Doublemint; and in adjudicating that issue of law (or mixed conclusion of fact and law), we necessarily adjudicated the following subordinate or foundational issues, averred in the pleadings and covered by the finding of facts, though we did not deem it necessary to enumerate them: That Larson Company was the owner of the common package and had the exclusive right to make and sell it; that Wrigley Company knowingly and willfully trespassed upon Larson Company's rights; that Wrigley Company was intentionally forestalling Larson Company; that Wrigley Company thereby constituted itself the agent of Larson Company in making and selling the common package that was the property of Larson Company; and that Larson Company was therefore entitled to stop the activities of its self-appointed agent. And although Wrigley Company in its pleadings did not directly tender the territorial limitation issue, that issue was substantially included in Wrigley Company's general denial of Larson Company's allegation that everywhere that Wrigley Company went it was putting Larson Company's product on the market.

[4] Now, it is true that the order to the master to take an account of all of Wrigley Company's profits from making and selling Doublemint is interlocutory, and therefore no question arising out of such an accounting is reviewable in this court until after the District Court shall finally have disposed of the master's report. But that does not authorize the master to open any question of fact or of law that was adjudicated in the decree of perpetual and universal injunction.

Wrigley Company moves to dismiss the appeal. We think that the question whether the directed decree of an appellate tribunal is being correctly carried into execution may properly be brought to that tribunal's attention either by petition for a writ of mandamus or by appeal from an order of the subordinate tribunal that is alleged to be in violation of the directed decree or by motion. If this is done only by a peti-

tion for a writ of mandamus, the opposing litigant is not directly brought into court; and it would seem to be not unreasonable to give the opponent direct notice in some way. The appeal will be allowed to stand as serving the purpose of motion and notice.

In our judgment the District Court should have controlled the action of the master and that court is accordingly advised to direct the master to proceed with the accounting in conformity with the order as entered.

In No. 2822 the writ will issue.

In No. 2831 the order is reversed.