CHICAGO TITLE AND TRUST COMPANY, EXECUTOR OF THE ESTATE OF CHARLES H. ALDRICH, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50472.   Promulgated September 24, 1935.

*Frederic O. Mason, Esq.*, for the petitioner.
*Claude R. Marshall, Esq.*, for the respondent.

#### OPINION.

BLACK: Petitioner seeks the redetermination of deficiencies in income tax against Charles H. Aldrich for the calendar year 1928 and the period January 1 to April 13, 1929, inclusive, in the respective amounts of $34,186.81 and $12,046.86; and also a deficiency in income tax against the estate of Charles H. Aldrich, deceased, for the period April 14 to December 31, 1929, in the amount of $46.88.

Only questions of law are involved, namely, (1) whether certain attorney fees earned by Charles H. Aldrich during his lifetime are income to Aldrich and his estate and therefore taxable to petitioner in the capacity of executor of the estate, or whether such fees are income to a certain trust created by Aldrich in 1925 and therefore

taxable to petitioner only in the capacity of trustee of the trust; and (2) whether petitioner is now estopped to deny its liability as executor, having previously, in negotiations with the Commissioner, denied its liability as trustee.

The facts are contained in a stipulation, which we incorporate herein by reference and summarize as follows:

Petitioner, a corporation, is the executor of the estate of Charles H. Aldrich, deceased, and also the trustee of a trust, referred to herein as the Aldrich Living Trust. Prior to his death, which occurred on April 13, 1929, Charles H. Aldrich was a lawyer and a resident of Chicago.

On March 18, 1914, and July 12, 1915, Aldrich entered into contracts of employment as attorney for the L. P. Larson, Jr. Co., in connection with certain litigation which was then pending between that company and the William Wrigley, Jr. Co. Under these agreements Aldrich's compensation was fixed at 33⅓ percent of such sum or sums " as we [the Larson Co.] may recover as damages in said suits or may be paid to us upon settlement thereof * * * payable to you as and when received by us."

The litigation between the Larson Co. and the Wrigley Co. extended over a period of years and was the subject of several appeals on disputed points. The litigation was finally settled out of court by means of a settlement agreement between the litigating parties, executed on December 11, 1928, under which agreement the Wrigley Co. agreed to pay and did pay the sum of $1,900,000, exclusive of certain court costs, in full settlement thereof.

Prior to January 6, 1925, Aldrich, in pursuance of his contracts of employment with the Larson Co. and an Illinois statute creating attorney's liens, gave notice to the Wrigley Co. of his claim for compensation under the contracts.

On January 6, 1925, Aldrich executed a written trust instrument creating what is referred to herein as the Aldrich Living Trust, in which instrument he designated George F. Porter as first trustee and the Illinois Merchants Trust Co. as successor in trust. Among other things, this instrument recited that Aldrich had entered into the employment contracts with the Larson Co.; that on July 30, 1918, and March 31, 1921, the United States Circuit Court of Appeals, Seventh Circuit, had handed down certain opinions in the Larson and Wrigley litigation (see 253 Fed. 914; certiorari denied, 248 U. S. 580; 275 Fed. 535); that under these opinions, the District Court had held that the Larson Co. was entitled to recover the sum of $1,384,649.48 with interest; that both parties to said cause had announced their intention to appeal; that Aldrich was " the owner of an equal undivided one-third interest in said decree "; that his one-third interest was subject to certain indebtedness theretofore

incurred in excess of approximately $100,000 to four different named persons; that it would be necessary for Aldrich to borrow an additional $50,000 "to enable him to carry on said litigation to completion"; that it was Aldrich's wish to provide for his three children; and to that end Aldrich—

* * * appointed and does hereby appoint George F. Porter trustee and the Illinois Merchants Trust Company successor in trust of said contracts with the L. P. Larson, Jr. Company without power to negotiate any settlement or arrangement with either the Larson or Wrigley Company to settle or diminish said contracts or the rights of the first party [Aldrich] accruing thereunder during the life of the first party hereto, or after the death of the first party, without the consent of both L. P. Larson, Jr. and Charles Roberts Aldrich [Aldrich's son], and agrees to and does hereby assign said contracts to said George F. Porter, Trustee, and said Illinois Merchants Trust Company, Successor in Trust for the following uses and purposes, to-wit:

FIRST: To hold and collect the same upon the conclusion of said cause either by final decree, settlement or otherwise * * * and to hold the proceeds arising therefrom in trust for the following uses and purposes:

(a) To pay the debts now against said contracts as above recited and also the sum of * * * ($50,000.00) to the holder or holders of five (5) notes of Charles H. Aldrich payable to his own order and by him endorsed, dated January 6, 1925 * * *

(b) To hold, invest and reinvest in safe, interest bearing securities the sum of * * * ($300,000.00) which sum is assigned to the second party hereto in trust, subject to the aforesaid indebtedness to the parties named, and pay the income therefrom equally and semiannually to my said three children * * *

\*       \*       \*       \*       \*       \*       \*

(f) Upon the termination of this trust, the principal of the trust, and all accumulations, if any, shall be divided equally among the grandchildren of the first party hereto * * *

\*       \*       \*       \*       \*       \*       \*

(j) The rest and residue, if any, to the first party accruing under said contracts of employment with L. P. Larson, Jr. Company, after the payments to creditors as herein directed, and the setting aside to said second party, as trustee, of the sum of * * * ($300,000.00) to constitute this trust for the uses and purposes herein set forth and declared, shall be paid to the first party hereto, if living, and in the event of his death shall be held and disposed of as said first party in writing shall direct or as may be directed by the last will and testament of said first party.

On or about February 23, 1927, Porter died without ever having received any money or properties as trustee. Thereafter the Illinois Merchants Trust Co. refused to act as successor in trust, which refusal resulted in the institution of a suit in equity for the appointment of a trustee. The cause came on for hearing, and a decree was entered on November 26, 1928, appointing the Chicago Title & Trust Co. (the petitioner herein) as trustee of the Aldrich Living Trust. Petitioner accepted the appointment.

Between January 6, 1925, and December 11, 1928, several disputes arose between Aldrich and his creditors, between Aldrich and the Larson Co., between Aldrich and the attorneys who were assisting

him, and between the Larson Co. and certain other attorneys, all of which culminated in a long arbitration agreement, executed by all parties concerned on December 11, 1928, the same date as the settlement agreement above referred to. Under the arbitration agreement the contentions of the several parties were set forth separately, together with the maximum amount of their claims. In the case of each disputant it was provided that the maximum amount—

* * * shall be paid by the said Wm. Wrigley Jr. Company by a separate check to the Trustee [petitioner], and shall be held by it in a separate fund apart from the other funds of the said trust, until the amount and the persons to whom it is payable is determined as herein provided.

The provision in the said arbitration agreement for the determination of the amount and the persons to whom each separate amount was payable was that each dispute was to be referred to an arbitrator (Honorable James H. Wilkerson, one of the judges of the District Court of the United States), whose award in each matter was to be final.

In harmony with the arbitration agreement and as provided and agreed to in the settlement agreement, the Wrigley Co. in December 1928 issued and paid the following checks in settlement of its damage suits:

| | |
|---|---:|
| Five separate checks totaling $271,010.62, made payable to petitioner as special trustee for disbursement in accordance with the arbitration agreement | $271,010.62 |
| One check made payable to petitioner as trustee of the Aldrich Living Trust, representing an undisputed balance of $300,000, and $62,322.71 subject to disputes | 362,322.71 |
| Subtotal (⅓ of $1,900,000) | 633,333.33 |
| Three checks totaling $148,000, made payable to the Larson Co., and by it endorsed to petitioner as special trustee for disbursement in accordance with the arbitration agreement | 148,000.00 |
| One check made payable to the Larson Co | 1,118,666.67 |
| Grand total | 1,900,000.00 |

Pursuant to the terms of the arbitration agreement petitioner held the various funds separately, with the exception of $300,000 which it immediately began to administer under the terms of the Aldrich Living Trust.

During 1929 the arbitrator made awards on all the claims except one, and pursuant to such awards petitioner released to the Aldrich Living Trust the sums of $202,991.31 prior to the decedent's death and $40,569.02 subsequent thereto.

On or about September 12, 1929, petitioner, as executor of the estate of Charles H. Aldrich, deceased, filed an individual income tax return (Form 1040) for the calendar year 1928, in which it reported as fees from the Larson Co. the amount of $300,000, and

attached to the return an explanatory statement, together with a copy of the trust instrument executed by Aldrich on January 6, 1925. The petitioner did not file any returns on behalf of Aldrich for the period January 1 to April 13, 1929, or on behalf of his estate for the period April 14 to December 31, 1929.

During March 1930 petitioner as trustee filed certain returns on behalf of the Aldrich Living Trust for the calendar year 1929, but did not report as income in such returns any amounts as representing attorney fees earned by Aldrich in connection with the litigation conducted by him on behalf of the Larson Co. No returns were filed on behalf of the Aldrich Living Trust or the beneficiaries thereof by petitioner as trustee for the calendar year 1928.

On or about April 29, 1930, an internal revenue agent made an investigation of the books and records of the decedent and of the Aldrich Living Trust and submitted reports to the Commissioner in which he recommended that the income representing fees received as the result of the settlement and arbitration agreements for services rendered by the decedent be taxed and assessed to petitioner as trustee of the Aldrich Living Trust, and not to petitioner as executor of the estate of Charles H. Aldrich, deceased.

On or about June 19, 1930, petitioner submitted to the revenue agent in charge at Chicago a formal protest to the action taken by the revenue agent, in which protest it contended that the fees in question were income to Aldrich and his estate, and therefore taxable to petitioner in the capacity of executor of the estate, rather than in the capacity of trustee of the Aldrich Living Trust. A conference was later held in connection with the protest.

On September 11, 1930, the respondent issued the deficiency notice herein to petitioner in the capacity of executor of the estate of Charles H. Aldrich, deceased, and in a statement attached thereto he said:

As a result of a conference granted you in the office of the internal revenue agent in charge at Chicago, Illinois, it has been conceded that income received as fees under a contract with the L. P. Larson, Jr. Company was taxable to Charles H. Aldrich during his life time and that amounts received between April 13, 1929, the date of his death, and December 31, 1929, were taxable income to his estate, instead of to the Aldrich Living Trust, as shown in the report.

In the deficiency notice the respondent determined that $436,747.23 of the fees in question was income to Aldrich in 1928; that $88,467.63 was income to Aldrich for the period in 1929 prior to his death; and that $6,844.13 was income to his estate for the period April 14 to December 31, 1929.

In the stipulation of facts filed in this proceeding the parties agree that, if the Board holds that petitioner is taxable in the capacity of

executor rather than in the capacity of trustee, then $300,000 of the fees in question was income to Aldrich in 1928, $202,991.31 was income to Aldrich for the period in 1929 prior to his death, and $40,569.02 was income to his estate for the period April 14 to December 31, 1929. The stipulation also deals with the other items of income and deductions which should receive consideration under Rule 50 in arriving at the net income stipulated by the parties.

Congress has plainly provided for the inclusion in " gross income " of all " gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid   *   *   *." Sec. 22 (a), Revenue Act of 1928. Our problem is to determine the proper entity that is legally responsible for reporting as gross income the $543,560.33 attorney fees in question and paying the correct income tax resulting therefrom. Aldrich earned the fees and ordinarily would be the proper person to report them and pay the tax thereon, which duty because of his death would fall upon the personal representative of his estate, the petitioner herein. The respondent has so determined. Petitioner, however, contends that by reason of the trust instrument executed by Aldrich on January 6, 1925, Aldrich (or because of his death the executor of his estate) is not the proper party to return the fees as income; that the fees were properly the income of the Aldrich Living Trust and should have been returned by petitioner in the capacity of trustee of the trust. Of course, petitioner is not before us in the capacity of trustee of the Aldrich Living Trust, and in any event, it has been stipulated that the assessment of any income tax for the years 1928 and 1929 against the Chicago Title & Trust Co. as trustee of the Aldrich Living Trust is now barred and outlawed by the statute of limitations.

At the outset it should perhaps be noted that petitioner also acted in the capacity of escrow agent or special trustee under the arbitration agreement for a brief period of time relative to $581,-333.33 paid by the Wrigley Co. in December 1928. Since neither the petitioner nor the respondent claims that petitioner incurred any tax liability in that capacity, we will express herein no opinion on that point. We will confine ourselves solely to determining whether petitioner is here liable in the capacity of executor of the estate of Charles H. Aldrich, deceased, and, if necessary, whether it is estopped to deny its liability in that capacity.

Whether petitioner, as executor, is liable for income tax on the earnings of Aldrich depends entirely upon the effect of the execution by Aldrich in 1925 of the trust instrument whereby Aldrich " agrees to and does hereby assign said contracts " of employment to the therein named trustee and successor in trust of the Aldrich

Living Trust. Petitioner contends that the alleged assignment therein had the effect of thereafter relieving Aldrich of any income tax liability on any fees that would thereafter be paid by the Larson Co. under such contracts. We do not think the instrument executed by Aldrich had that effect. It is well settled that contracts in which the personal acts and qualities of one of the contracting parties form a material ingredient are, in general, not assignable. *Munsell* v. *Temple*, 8 Ill. 93; *Sloan* v. *Williams*, 138 Ill. 43; 27 N. E. 531; *Salmon Lake Seed Co.* v. *Frontier Trust Co.*, 153 Atl. 671, 673, and cases therein cited. They may, however, be assigned with the consent of the other contracting party. *Cleveland, C., C. & St. L. Ry. Co.* v. *Wood*, 189 Ill. 352; 59 N. E. 619; *Ginsburg* v. *Bull Dog Auto Fire Insurance Association of Chicago*, 328 Ill. 571; 160 N. E. 145. But we do not think the stipulated facts show that Aldrich or the Larson Co. ever contemplated that the services theretofore being performed by Aldrich would, after the alleged assignment, be performed by someone else. The assignment, therefore, was not of the contracts themselves, but of the fruits thereof. The law seems to be well settled that under such circumstances the income from such contracts is taxable to the earner thereof. *Lucas* v. *Earl*, 281 U. S. 111; *Luce* v. *Burnet*, 55 Fed. (2d) 751; *Van Meter* v. *Commissioner*, 61 Fed. (2d) 817; *Harry A. Daugherty*, 24 B. T. A. 531; affd., 63 Fed. (2d) 77; *Emery* v. *Commissioner*, 78 Fed. (2d) 437. In the last mentioned case the court, among other things, said:

The general principles of law involved are not in dispute. * * * On the other hand payments for personal services are always due primarily to the person rendering the services; he remains " the owner of the right or title from which the income springs." *Saenger* v. *Commissioner*, 69 Fed. (2d) 631; *Luce* v. *Burnet*, 55 Fed. (2d) 751. When such earnings are assigned, the assignee takes as representative of the assignor and the earnings continue to be taxable to the assignor. *Lucas* v. *Earl*, 281 U. S. 111; *Luce* v. *Burnet, supra; Corliss* v. *Bowers*, 281 U. S. 376.

Petitioner in its brief emphasizes the fact that on January 6, 1925, the litigation had reached a point where it was very apparent that Aldrich would receive a substantial fee for his services, which petitioner contends was a definite property right capable of being assigned *in praesenti*. At the time Aldrich executed the trust instrument both the Larson Co. and the Wrigley Co. had announced their intention to again appeal from the holding of the lower court, and it was not until the settlement agreement was entered into on December 11, 1928, that the litigation was finally settled. Nevertheless, even assuming it to be true that on January 6, 1925, Aldrich did have a chose in action which was capable of being assigned, the assignment thereof, under the above cited cases, would not relieve the

assignor, or his executor, from first paying the tax on the income assigned. *Daugherty* v. *Commissioner, supra*. In this connection the court in that case said:

Inasmuch as the contract of employment in this case created a relationship of attorney and client, there could be no transfer of the corpus or res, and the gift effected merely an equitable assignment of petitioner's possible future income. In *Poe* v. *Seaborn*, 282 U. S. 101, 117, 51 S. Ct. 58, 61, 75 L. Ed. 239, the court said: " The very assignment in that case [*Lucas* v. *Earl*, 281 U. S. 111. 50 S. Ct. 241, 74 L. Ed. 731] was bottomed on the fact that the earnings would be the husband's property, else there would have been nothing on which it could operate." So, here, the assignment could operate on nothing but the earnings of petitioner. The fact that petitioner did no work in connection with the litigation out of which the income arose does not alter the situation. His prior services in connection with that litigation undoubtedly prompted the parties in making the contract of employment which gave rise to the income, and his interest in the contract at the time of the assignment was, of course, wholly uncertain and contingent.

We are therefore unable to distinguish this case from the broad rule of *Lucas* v. *Earl, supra,* that the fruits should not be " attributed to a different tree from that on which they grew ", and from cases in which the courts have held that anticipatory arrangements transferring income to accrue from personal services to be rendered by the assignor are unavailing for tax purposes. [Citing cases.]

Petitioner cites and relies upon such decisions as *Edith H. Blaney*, 13 B. T. A. 1315; *Marshall Field*, 15 B. T. A. 718; *J. V. Leydig*, 15 B. T. A. 124; *O'Malley-Keyes* v. *Eaton*, 24 Fed. (2d) 436; *Young* v. *Gnichtel*, 28 Fed. (2d) 789; and *Lowery* v. *Helvering*, 70 Fed. (2d) 713. The first five cases are easily distinguishable from the instant proceeding. In each of those cases the assignor assigned certain income-producing property rights which thereafter earned the income there in question, and the assignee, being the new owner of the property which produced the income, was taxable on the income rather than the assignor. We think the *Lowery* v. *Helvering* case is explainable on the same theory, although the distinguishing features are not perhaps as clear as in the first five cases. But be that as it may, the court clearly recognized the applicability of the rule laid down in *Lucas* v. *Earl, supra*, to a state of facts such as are present in the instant proceeding, wherein it said:

Cases like *Lucas* v. *Earl* * * * and *Burnet* v. *Leininger* * * * are to be explained on quite another theory. The choses in action there transferred were indeed as absolutely transferred as though they were unconditional in obligation; but they were conditional upon continued performance by the assignor, the original obligee. There is therefore a real propriety in looking at the obligee's performance as the source of the income, though strictly his control over it is only negative.

In the instant case, the alleged assignment by Aldrich in 1925 fully contemplated his continued performance under the contracts in question.

73

It is our opinion that under the authorities which we have cited the attorney fees here involved are properly the income of Aldrich and his estate in the amounts and for the periods covered by the stipulation, and that petitioner as executor of his estate is therefore liable in that capacity for the tax resulting therefrom. It thus becomes unnecessary to decide the question relating to estoppel.

*Decision will be entered under Rule 50.*