## BALLOCH v. HOOPER.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 21.    Argued November 7, 8, 1892. — Decided December 5, 1892.

On the facts in this case detailed in the opinion it is *Held,*

    (1)  That the deed from Balloch to Hooper of February 25, 1880, was given to better secure Balloch's indebtedness to the Life Insurance Company;

    (2)  That that company believed in good faith that Hooper was authorized, as holder of the legal title of record, to raise money on the property, and secure its payment by deed of trust;

    (3)  That there was nothing in the relations between Hooper and Balloch which would prevent the company loaning money to Hooper on the security of the property;

    (4)  That there was no evidence of a fraudulent combination to injure Balloch;

    (5)  That there was no ground for questioning the accuracy of the accounting.

THE case is stated in the opinion.

*Mr. S. S. Henkle* for appellant.

*Mr. Job Barnard* (with whom was *Mr. James S. Edwards* on the brief) for appellees.

MR. JUSTICE HARLAN delivered the opinion of the Court.

The appellant, Balloch, became the owner, by purchase in 1878, from J. Bradley Adams, of certain lots on Sixteenth and S streets, in the city of Washington, giving his notes for the purchase money, and securing their payment by a deed of trust covering the whole property.   He placed upon record a subdivision of part of the property, making fourteen lots on the west side of Sixteenth street, seven lots (with a small strip) on the south side of Swan street, and six lots on the north side of S street.

In order to obtain money for the construction of houses

upon some of those lots, fourteen on Sixteenth street and six on S street, he borrowed from the Massachusetts Mutual Life Insurance Company the sum of $16,000, executing therefor his eight promissory notes of $2000 each, bearing interest at eight per cent until paid. Subsequently, he borrowed other sums from the company, namely, $10,200, for which he made his six promissory notes of $1700 each, bearing like interest, and $9000, for which he gave his four notes, bearing like interest, three for $2000 each and one for $3000; and to secure those respective loans Balloch executed a deed of trust upon particular lots in the above subdivision. These deeds of trust were severally executed June 4, 1879, October 11, 1879, and February 17, 1880. William R. Hooper was the general agent of the company in the city of Washington for the purpose of "placing" life insurance and collecting premiums, and Balloch's negotiations with it were through him. He was named in each of the deeds as trustee.

It was agreed that one-half of the sum loaned should be paid to Balloch at the time the notes and deed of trust were delivered; that the company should pay off the amount due on the purchase from Adams, which was secured by prior recorded deed of trust; and that the balance should be paid to Balloch as he might need it in the work of constructing the houses on the lots.

In connection with these loans Balloch purchased from the company other houses, under an agreement that the cash payments thereon might be retained by the company out of the loans, and that he would give for the balance of the price his promissory notes, payable to the company's order, and secured by deeds of trust to Hooper as trustee. It should also be stated that when the above loans were made Balloch was indebted to the company on other loans, secured by deeds of trust on property on the corner of Q and Thirteenth streets.

By deed absolute in form, dated February 25, 1880, and recorded February 27, 1880, Balloch conveyed to Hooper all the property purchased from Adams, except two lots on Sixteenth street, and all the property purchased by him from the company at the time the above three loans were effected, the

consideration recited in the deed being " the sum of five thousand dollars previously advanced, and one dollar in lawful money of the United States." It is stated by the company that at the time this deed was executed the houses proposed to be erected by Balloch on Sixteenth and S streets were in an incomplete condition ; that the taxes due when he purchased from Adams, as well as the taxes on the property purchased by him from the company, were unpaid ; that more than $5000 was still due Adams ; that the principal of the notes given to the company was unpaid ; and that the property included in the deed to Hooper was burdened with mechanics' liens, and otherwise.

Hooper took possession of the property so conveyed to him, and undertook the completion of the houses on Sixteenth and S streets. But, with the means at his command, he found it impossible to proceed without obtaining financial assistance. Accordingly, in October, 1881, he informed the company of Balloch's deed to him of February 25, 1880, and of the exact condition of affairs with respect to the property. But it appears that the company was not, in fact, notified until October, 1881, of the transfer by deed from Balloch to Hooper. It made an arrangement with Hooper to advance to him a sum sufficient to complete the proposed improvements on the property, to pay off all incumbrances, including Balloch's notes and indebtedness to it, and to discharge the liens held by it ; Hooper to give his note for the amount so to be advanced, and to secure its payment by a deed of trust upon the property. This arrangement was carried out. Hooper gave his note to the company for $71,000, secured by a deed of trust running to Frank H. Smith, as trustee, and the company cancelled Balloch's notes, discharged his indebtedness to it, and released the liens created by the above deeds of trust executed in its favor. Under the above arrangement, the houses were to be completed, rented and sold, under the direction of Smith, who was to receive and disburse the sums which the company might advance to Hooper.

The present suit against Hooper and the company was brought by Balloch on the 7th of December, 1882. The theory

of the bill is that the company did not pay to Balloch, at the times agreed upon, the one-half of the several loans of $16,000, $10,200 and $9000, nor the claim of Adams, nor the remainder of the loans, but fraudulently withheld the money or a great portion of it, whereby Balloch was seriously injured and embarrassed, rendering it impossible for him to complete the improvements of his lots. The bill charges that the defendants paid upon the loans only $14,725.15; that when the deed of February 25, 1880, was made, the defendants had in their possession of his money $20,474.85, which they refused to pay him; that defendants, knowing well the plaintiff's embarrassment, on account of their failure to pay the amount due him, proposed to him that if he would convey to Hooper the property covered by the deed to the latter, the company would finish all the houses out of the funds remaining in their hands belonging to the plaintiff, sell them for the highest and best price attainable, and, after reimbursing themselves, divide the remainder, upon the basis of three-fourths to the plaintiff and one-fourth to the company; that the plaintiff's embarrassed condition, the result of corrupt and fraudulent conduct of the defendants, compelled him to accept this proposition, and that accordingly he made to Hooper the absolute deed of 1880. The bill also charges that the defendants did not proceed immediately to complete the houses according to their agreement, but allowed them to stand for two years; that most, if not all, the houses had been sold, but the defendants had failed and refused to give any account thereof; and that, upon a proper accounting, there was due to the plaintiff as much as $40,000. The relief asked was an injunction restraining the defendants from selling the property or from collecting rents therefrom; that a receiver be appointed to take possession of the unsold property and to collect rents; that the defendants be required to account as trustees; and that the plaintiff have a decree for the amount found to be due him. The defendants severally answered, putting in issue all the material allegations of the bill. The cause was referred to the auditor to take and report an account of all the transactions. A report was made, covering every possible view of the case. Among the schedules

submitted by the auditor was one stating the account of Hooper with the company. In this account Hooper was charged with the amount of the notes of Balloch secured by the several deeds of trust on the property which the latter gave, (excluding a note for $1800 secured on a lot named,) with other disbursements for the completion of the houses, for payment of taxes, insurance, costs of repairs, discharge of liens and other expenses, with interest on those respective amounts, and he was credited by the amounts received on sales of property, rents, etc., with interest thereon; showing, on that basis, a balance in favor of the company of $52,097.37, as of September 1, 1886.

The exceptions were overruled and a decree was passed declaring the above sum to be a first and prior lien and encumbrance in favor of the company, as against the claims of all the other parties to the cause, on certain lots and the improvements thereon, being the unsold property mentioned in the deed from Hooper to Smith, subject to future accounting as to interest accruing to the company on account thereof, and as to the receipts and disbursements on the property subsequent to September 1, 1886, and to a credit thereon of $2029.82 paid by the company to Smith for services rendered in disbursing moneys expended in the construction of buildings. The decree, also, allowed to Hooper $1550.43 found by the auditor to be due to him from Balloch, and made it a second and subordinate lien and encumbrance upon the property, and declared the deed of February 25, 1880, as between Balloch and Hooper, to be null and void.

Upon appeal by Balloch to the general term this decree was affirmed.

The court below correctly held that, so far as Hooper was concerned, the absolute deed from Balloch of February 25, 1880, must be held to have been taken for the purpose of better securing the indebtedness of the latter to the company. This is placed beyond doubt by the statement in Hooper's answer to the effect that, shortly after the execution of the deed of trust for the loan of $9000, " to wit, February 25, 1880, the complainant [Balloch] of his own volition voluntarily transferred and con-

veyed to this defendant all the said property before included in the said several deeds of trust, together with certain other lots described in the conveyance then made, which property was taken by this defendant for the purpose of better securing the said company in the ultimate realization and collection of the moneys so as aforesaid loaned to the complainant." This admission is conclusive as between Hooper and Balloch, and is not at all weakened by the somewhat contradictory statements subsequently made by the former in his deposition in the cause.

But, as we have seen, the company had no knowledge of this absolute deed to Hooper until October, 1881, when it was informed by him of the condition of the property upon which the three loans of $16,000, $10,200 and $9000 had been made. By the act of Balloch in making and putting that deed upon record, Hooper was enabled to represent himself as the owner of the property, and to make arrangements with the company for money with which to complete its improvement. According to the weight of the evidence, the company, in good faith, believed, and was not negligent in believing, that Hooper was authorized, as the holder of the legal title of record, to raise money upon the property and secure its payment by deed of trust. Balloch, therefore, has no right to complain of the arrangement made by Hooper with the company. Indeed, that arrangement was for the interest of Balloch, provided the moneys advanced by the company to Hooper were fairly used to liquidate the existing indebtedness of Balloch and to complete the construction of the houses according to his original plan.

Balloch insists that the relations that subsisted between Hooper and Balloch forbade the former from taking title to the property. If that were true, as between them, it would not follow that the company, acting in good faith, might not loan money to Hooper, and take a lien upon the property to secure its repayment. As, upon the evidence, the company is not chargeable with bad faith in making the arrangement it did with Hooper, all that Balloch could equitably demand was that which was awarded to him in the court below, namely,

an accounting with reference to the moneys advanced and expended under the arrangement it made with Hooper, and a recognition of his right to redeem upon paying the balance found to be due, upon such accounting, to the company. It is a mistake to suppose that in so holding we disregard the rule that " whenever the trustee has been guilty of a breach of the trust, and has transferred the property, by sale or otherwise, to any third person, the *cestui que trust*, has a full right to follow such property into the hands of such third person, unless he stands in the predicament of a *bona fide* purchaser, for a valuable consideration, without notice." *Oliver* v. *Piatt*, 3 How. 333, 401. When Balloch put the absolute title in Hooper he knew that the contemplated improvements could not be made without borrowing more money on the property, and he must have expected that Hooper would obtain, in that way, the required funds. And there is not the slightest ground in the evidence for the charge that the company and Hooper fraudulently combined for the purpose of injuring Balloch. The company had no reason to suppose that the arrangement made with Hooper was in violation of any agreement or understanding that Balloch had with him at the time of the conveyance of February 25, 1880. The company, upon every principle of equity, is entitled to a lien upon such of the property embraced in the deed of trust to Smith, as remained unsold, to secure the payment of the balance due for the sums advanced by it. After a careful scrutiny of the evidence we find no ground for questioning the accuracy of the accounting below, or of the balance adjudged to be due the company. The contention that more was expended upon improvements than ought, in fairness to have been expended, is not sustained by such proof as would justify a reversal of the decree, in whatever light the case is viewed. While there is some slight justification for this contention, we are of opinion that the conclusion reached by the auditor is sustained by the preponderance of evidence. It is certain that the company advanced the moneys which are charged, in the accounting, against the property. And it is equally certain that these moneys were, in fact, expended upon the property, or for the benefit of

Balloch. Even if it were assumed that the company was bound to see that the moneys advanced under its agreement with Hooper were properly and reasonably expended, the evidence does not show that an excessive amount has been charged in its favor or in favor of Hooper against the property in question..

We perceive no error in the decree, and it is

*Affirmed.*