L. P. LARSON, JR., CO. v. WM. WRIGLEY, JR., CO.

WM. WRIGLEY, JR., CO. v. L. P. LARSON, JR., CO.

(Circuit Court of Appeals, Seventh Circuit. July 30, 1918.)

Nos. 2498, 2500.

1. TRADE-MARKS AND TRADE-NAMES ⬳3(4)—SUBJECT-MATTER.
    The word "Spearmint" is a common noun, denoting flavor, and is not susceptible of appropriation as a trade-mark.

2. TRADE-MARKS AND TRADE-NAMES ⬳59(5)—INFRINGEMENT.
    The word "Peptomint" is so different in appearance and sound that it would not infringe "Spearmint," were it a proper trade-mark.

3. TRADE-MARKS AND TRADE-NAMES ⬳93(3) — UNFAIR COMPETITION — EVIDENCE.
    Evidence *held* insufficient to show that defendant, a rival gum manufacturer, which sold its product under the name "Peptomint," was guilty of unfair competition towards complainant, which sold its gum under the name "Spearmint."

4. TRADE-MARKS AND TRADE-NAMES ⬳84—RELIEF—FRAUD.
    Where complainant, who sued for unfair competition and infringement of trade-mark, attempted to deceive the court and oppress his opponent, that was sufficient ground for denying him equitable relief.

5. EVIDENCE ⬳265(7)—JUDICIAL ADMISSIONS—ACCEPTANCE.
    While a litigant has no cause to complain if the court accepts his solemn and sworn admissions in pleadings and testimony as true, his

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

adversary cannot compel the court to do so, for, if that were possible, a court could be forced to decide moot, feigned, and collusive cases, etc.

6. EVIDENCE ⬡⟹265(7)—JUDICIAL ADMISSIONS—ACCEPTANCE.

In a real and legitimate controversy, a party should be left bound by his averments in pleadings and his admissions in testimony, unless the court can find an absolute demonstration from other evidence, or from facts within judicial notice, that the averments and admissions could not be true.

Appeals from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill by the William Wrigley, Jr., Company against the L. P. Larson, Jr., Company, together with another bill by the same complainant against the same defendant, which counterclaimed. The first bill was dismissed, and complainant appeals; while the second bill and counterclaim were dismissed, and defendant appeals—the appeals being consolidated. First decree affirmed, and that part of the second decree dismissing the counterclaim reversed, with directions.

Certiorari denied 248 U. S. ——, 39 Sup. Ct. 22, 63 L. Ed. ——.

James R. Offield, of Chicago, Ill. (Charles K. Offield, of Chicago, Ill., of counsel), for Wm. Wrigley, Jr., Co.

Charles H. Aldrich, Frank F. Reed, and Edward S. Rogers, all of Chicago, Ill., for L. P. Larson, Jr., Co.

Before BAKER and ALSCHULER, Circuit Judges, and LANDIS, District Judge.

BAKER, Circuit Judge. In No. 2500 Wrigley Company appeals from the final dismissal of its bill against Larson Company for alleged unfair competition and infringement of trade-mark.

[1, 2] "Spearmint" was counted on as a trade-mark and was charged to be infringed by "Peptomint." First. "Spearmint" is a common noun, denoting flavor, and is therefore not susceptible of appropriation as a trade-mark. Second. "Peptomint" is so different in appearance and sound that there would be no infringement, even if "Spearmint" were a proper trade-mark.

[3, 4] Respecting unfair competition, an inspection of the packages discloses some marked dissimilarities. On the display side of the one "Wrigley's Spearmint Pepsin Gum" are the prominent words; on the other, "L. P. L. Peptomint Gum." "Spearmint," specially emphasized, is printed on the shaft of a spear, lying horizontally along the middle of the label. "Peptomint," specially emphasized, is printed on a straight-line banner, running obliquely from lower left to upper right, and laid upon a circle in the middle of the label. These differences, when the labels are placed side by side, are very striking. But there are also striking similarities. Both packages severally contain 5 sticks of gum, done up in pink wrappers, which protrude at each end some distance beyond the label wrappers. Both labels are done on white paper with red and green printers' inks. Spear shaft and head are green, and thereon "Spearmint" shows in large white letters. Larson Company's banner is green, and thereon "Peptomint" shows in large

white letters. "Wrigley's" above the spear and "Pepsin Gum" below are printed in red. Larson's circle is red. In segments above and below the banner "L. P. L." and "Gum" appear in white on the red background. Both labels bear sprigs of mint in green.

If the case were to be disposed of by the foregoing comparison, the finding might well be that the similarities so overbear the differences that the casual purchaser might be misled by the common color and printing scheme; and such was the view of the learned District Judge in granting a pendente lite injunction on the sworn bill and exhibits.

But at the final hearing other facts appeared, which may be briefly summarized as follows: In gum making before Wrigley's time it was common practice to form sticks of the size and shape now used by Wrigley and Larson; to wrap the sticks in pink paper; to put 5 sticks in a package; to put 20 packages in a box; to tie each package of 5 pink sticks with a counterband of white paper; to use red and green printers' inks on the white counterband; to display the maker's name and "Gum" or "Pepsin Gum" in red letters; and, if the flavor was of the mint order, to print the name denoting flavor in white on a green design or in green on a white design. And on the package of this general style Wrigley was not the first to apply "Spearmint" as a display word of special emphasis. That had been done by Pulver years before Wrigley came on the scene. So there was nothing that Wrigley did not take from others, except his own name and the spear as the design on which to spread the word "Spearmint."

Wrigley, of course, knew these facts, and also the inside story of his suit against Pulver. According to the final decree in that case, Wrigley, not Pulver, was the originator of the "Spearmint" package. But the decree was not entered until Wrigley owned both sides of the lawsuit. He gave Pulver $100,000 in cash and $150,000 in notes running one to five years. If Pulver should fail to keep still, there might be trouble in collecting the notes remaining unpaid. It was Larson's persistent digging that unearthed this hidden story.

Wrigley's oppression of his opponent and his attempt to deceive the court were ample grounds for refusing him relief in equity; and in the strict law, when Wrigley is limited, as he must be, to his own name and the spear design for displaying "Spearmint," Larson is not liable for using his own initials and the oblique banner across the circle for displaying "Peptomint."

[5] In No. 2498, the record came here first; but it presents a later controversy. Larson, while under the pendente lite injunction against his "Peptomint" package, brought out his "Wintermint" brand. Wrigley sued him as an infringer of "Wrigley's Doublemint" package. On final hearing Wrigley's bill was dismissed for want of equity, and Wrigley has acquiesced.

Wrigley's bill described the packages and averred that confusion had arisen and was bound to continue. This was fortified by the opinion testimony of Wrigley and another officer of his company. Larson, in his answer and counterclaim, fully accepted Wrigley's position as to similarity and confusion, denied that "Wrigley's Doublemint" was the elder, and averred that Wrigley had deliberately brought out "Double-

mint" to undermine Larson's established and growing trade in "Wintermint." The evidence proves with certainty that "Wintermint" was seven months older than "Doublemint." A reasonably clear inference from facts in the record is that Wrigley was acquainted with the "Wintermint" package before adopting his "Doublemint" package.

But, in support of the counterclaim, no proof was made of actual confusion. Counsel, however, contend that an inference to that effect may be drawn from Larson's testimony that after "Doublemint" appeared his sales of "Wintermint" materially decreased. True, but a falling off in business may result from fair as well as from unfair competition.

Insistence comes to be centered on the proposition that the trial court was not at liberty to determine the question of actual or probable confusion from a comparison of the packages and from the lack of direct testimony, but was bound to take that issue as settled by Wrigley's averments and admissions in court; and counsel cite many cases as supportive of their contention.[1]

Undoubtedly a litigant has no cause for complaint if the court accepts his solemn and sworn admissions in pleadings and testimony as true. But we must reject the contention that his adversary has the right to compel the court to do so. Otherwise a court could be forced by parties to decide moot, feigned, and collusive cases, or a chancellor might be made to proceed with an equitable accounting between partners who had stolen the property they brought into court.[2] But the present case on the counterclaim is not moot, nor feigned, nor collusive, and it presents a question of Larson's legitimate property rights.

In the "Wintermint" package the sticks of gum are wrapped in green paper; also in the "Doublemint" package. Both have counterbands of white paper bearing words and devices in red and green printers' inks. To a casual glance the packages seem alike in some degree. But the differences are noticeably prominent. "Wintermint" is displayed

[1] Sullivan v. Colby (C. C. A. 7th) 71 Fed. 460, 464, 465, 18 C. C. A. 193; 10 R. C. L. 701, 702, sub. "Estoppel," where the authorities are cited as follows: Sutherland v. Sutherland, 102 Iowa, 535, 71 N. W. 424, 63 Am. St. Rep. 477; Tarbell v. Royal Exchange Shipping Co., 110 N. Y. 170, 17 N. E. 721, 6 Am. St. Rep. 350; Morrison v. Atkinson, 16 Okl. 571, 85 Pac. 472, 8 Ann. Cas. 486, and note. Vide Appeal and Error, 2 R. C. L. 183 et seq.; Balloch v. Hooper, 146 U. S. 363, 13 Sup. Ct. 128, 36 L. Ed. 1008; Northern Pac. Ry. v. Paine, 119 U. S. 561, 7 Sup. Ct. 323, 30 L. Ed. 513; Kansas R. Co. v. Morton, 61 Fed. 814, 10 C. C. A. 12; Central R. Co v. Stoermer, 51 Fed. 518, 2 C. C. A. 360; Clark-Montana R. Co. v. Butte & S. Copper Co. (D. C.) 233 Fed. 547; Historical Pub. Co. v. Jones Bros. Pub. Co., 231 Fed. 638, 145 C. C. A. 524; Morton v. Clark, 181 Mass. 134, 63 N. E. 409; Loughridge v. N. W. Ins. Co. 180 Ill. 267, 54 N. E. 153; Standard Brewing Co. v. Bemis Malting Co., 171 Ill. 602, 49 N. E. 507; Leeds v. Townsend, 228 Ill. 451, 81 N. E. 1069, 13 L. R. A. (N. S.) 197.

[2] Everet v. Williams, section 94, note, Lindley on Partnership (5th Eng. Ed.); Evans v. Richardson, 3 Merivale, 469; Richardson v. Buhl, 77 Mich. 632, 43 N. W. 1102, 6 L. R. A. 457; Bartle v. Nutt, 4 Pet. 184, 7 L. Ed. 825; Coppell v. Hall, 7 Wall. 542, 19 L. Ed. 244; Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539; Fowle v. Spear, Fed. Cas. No. 4996; Heath v. Wright, Fed. Cas. No. 6,310; Kohler v. Beeshore, 59 Fed. 572, 8 C. C. A. 215; Uri v. Hirsch (C. C.) 123 Fed. 568; Fetridge v. Wells, 13 How. Pr. 388; Simmons v. Mansfield Drug Co., 93 Tenn. 84, 23 S. W. 165.

on Larson's oblique banner; "Doublemint," on the shaft of a spear having a head at each end. And the name of the maker in each case is given emphasis: "Larson's Wintermint," "Wrigley's Doublemint." From a comparison the learned District Judge found that the distinctive words and marks were so dominating that the careless purchaser, desiring "Larson's Wintermint," would not be misled into taking "Wrigley's Doublemint."

[6] With nothing before us but the packages, we would be inclined to concur in the finding. But the record contains also Wrigley's averment in his bill that confusion had arisen. There was no proof to support that averment and Larson's parallel averment. But Larson's counsel may have relied on the stipulation of fact in bill and counterclaim to save hunting up and bringing in witnesses of wrongful sales. Furthermore, Wrigley and another interested with him gave testimony as experts in the gum business that confusion was likely to result from the similarities; and so there is a basis for at least the possibility that Wrigley's averment of fact and his expert opinion may be true, and that Larson's diminished sales came from Wrigley's simulation of the "Wintermint" package.

In such a situation, the rule, in our judgment, is this: In a real and legitimate controversy, a party should be left within the knot of his averments in pleadings and admissions in testimony, unless the court can find an absolute demonstration from other evidence in the case or from facts within judicial notice, like the laws of physics, etc., that under no circumstances could the averments and admissions be true. This is in analogy to the rule respecting the sustaining of a demurrer to a bill for infringement of a patent on account of the invalidity of the patent on its face. Westrumite Co. v. Commissioners, 174 Fed. 144, 98 C. C. A. 178; Lange v. McGuin, 177 Fed. 219, 101 C. C. A. 389.

In No. 2500 the decree is affirmed.

In No. 2498 the part of the decree that dismisses the counterclaim of Larson Company is reversed, with the direction to enter an injunction and order an accounting.