**STATE ex RICHLAND PARENT TEACHER'S ASS'N. v BOARD OF EDUCATION OF RICHLAND TWP.**

Common Pleas Court, Vinton Co

No 8311. Decided Jan 27, 1941

W. J. Jones, McArthur, for relator.

G. C. Snyder, McArthur, for respondent.

## OPINION

By CHATFIELD, J.

This is an action in mandamus brought by the Richland Parent Teachers Association of Vinton County, Ohio, as such association. It is sought to require the respondent to grant the use of a new school building or that part thereof known as an auditorium for the purpose of holding meetings at unstated times by the said association. The answer of respondent admits the existence of the association, that demand was made for the new school building and said demand denied although it alleges that a suitable meeting place was not refused, to which last mentioned allegation issue is made in the reply by denial that the place referred to, an adjoining school building, was suitable as a meeting place.

The case comes on for consideration upon the pleadings, evidence, oral and written arguments of counsel.

A review of the record discloses that on June 4, 1940, a meeting of a number of people was had at the new school building for the purpose, among other things, of sponsoring a certain W.P.A. garden project that had been rejected by the board of education. The only record of this or subsequent meetings is disclosed by oral testimony and copies of certain correspondence signed by "Mrs. Ernest Sowers, Sec." purporting to describe the activities and wishes of this group, who apparently on June 4, 1940 adopted the name of this relator. There is in the record no evidence of any formal action having been taken by the association to request the respondent for the use of the building. It also appears that the association was not incorporated and did not become affiliated with the Ohio and National Associations until August 22, 1940. The record is silent as to any authority having been granted to any persons by the Parent Teacher's Association to make request for the use of the new school building, and although the petition and answer refer to a request by relator the evidence shows that no meeting was had by said association since it was granted a charter by the State and National Associations. While the respondent does not raise any question as to the power of the association to sue in its own name as it has done, it contends that as the members of the association must be looked to for any liability that might arise from the use of the building, said members could not be held responsible for alleged association activities

concerning which no parliamentary action had taken place in which the membership was permitted to vote, and that in the absence of some financial responsibility the board was justified in refusing use of the new school building.

The evidence in the case fails to disclose an absolute refusal on the part of respondent to furnish a place of meeting for the relator. On the issue joined as to the suitability of the old school building as a meeting place the court finds that the said building is suitable and adequate for all ordinary purposes of the relator. True, the use of the new school building was denied by respondent, although it appeared upon the trial of the case that the auditorium in that building would be granted for special occasions so far as the individual members of the board were concerned, i. e., when the facilities of the old building were not sufficient to house the crowd, etc. This is substantiated by the fact that Grange and other organizations, social groups and even some school parties seem to utilize the old building.

The issues of the case are seen, therefore, to concern themselves with the nature and validity of the request made, and with the nature and validity of the respondents reaction to the request as made.

While the entity or artificial personality of relator under the law is not called into question in this case by respondent, the court experiences grave doubt as to whether there is a party relator recognized by the law in this case.

In the Ohio Jurisprudence, under the title of associations a paragraph entitled "Capacity to Sue" says in part:

"As pointed out above, in order to maintain an action, one must possess legal capacity to sue. If, however, objection is desired to be made on the ground that one party does not possess such capacity, it should be distinctly pleaded. either by demurrer, or answer; otherwise, it is deemed to have been waived."

The court reports in Ohio are replete with cases in which a waiver was deemed effected. Some significance seems to be found by the courts in the nature of the purpose of the association, and the tendency would appear to be toward distinguishing between associations for business, joint venture and profit, and non-profit associations. Thus in **Citizens Loan & Savings Association of Greenville v Krichinberger, Executrix, 46 Oh Ap 228:**

"1. Artificial organizations engaged in business in Ohio for profit must be classed as partnership or corporation to have status in courts thereof.
2. Generally, unincorporated society or association organized for profit, is a partnership as to third persons."

The court fails to understand this apparent distinction between profit and non-profit associations other than as a possible basis upon which to effect justice in a particular case. The association in the case at bar, and I find no allegation or competent evidence in the record that it is a corporation, is a non-profit association although the salutory and worthy objects of Parent Teachers Associations as a whole can not be brought into question. On the other hand a consideration of the definition of an "action", §11237 GC serves but to add to one's perplexity for there it is plainly contemplated that issue must be joined between at least two parties. If, as appears to be the law of Ohio, an unincorporated society is neither a natural nor an artificial person within the law, it is difficult to see how there can be any action without a party plaintiff or relator, nor does it appeal to the reason of an average person to speak of such a defect being waived and nullified by any malfeasance, misfeasance, or nonfeasance by either such a creature or by a person recognized as such in the law. Especially would such waiver appear uncalled for when by the simple expedient of following the class or group party statute of Ohio, §11257 GC, an association can sue or be sued by nam-

ing its members who unquestionably in this case have entity as they are natural persons.

Under the heading of "Parties" is pointed out in 47 C. J. §364:

"The non-existence of plaintiff goes in abatement of the action in some jurisdictions and in bar of the action in other jurisdictions and should be distinguished from misnomer."

And cites Mason v Farmers Bank, 12 Leigh (39 Va) 84, 91:

"In an action by a corporation or a natural body, misnomer of one or the other goes only to the writ, but to say that there is no such body politic, this is in bar, for if he be misnamed, he may have a new writ by the right name; but if there be no such body politic or such person, then he can not have an action." Stafford v Bolton, 1 B. & P. 40.

In the case of **St. Augustine Church v Metropolitan Bank of Lima, Ohio, 15 OO 520** a judgment in Auglaize county was reversed among other reasons because plaintiff in error was an uncorporated religious society. The case at bar differs in that it doesn't positively appear that the association is unincorporated. But in that case the Court of Appeals was the first to notice and attach any significance to it. The court alluding to it at page 528, cites the following:

"An unincorporated association can not sue or be sued in its own name. Even the members of an unincorporated association can not be sued as members of the association but must be sued as individuals, collectively and conjointly. 3 **O. Jur. 758.**"

"A voluntary association of persons which is not a legal entity, has no legal existence. and can not sue or be sued. has no capacity to appoint an agent. 3 Am. Jur. p. 20."

The court, Judges Guernsey and Klinger concurring then says:

"Under the authorities mentioned, the plaintiff in error congregation being a voluntary unincorporated society or association, could not sue or be sued in its own name, and had no capacity to appoint an agent to act on its behalf in the transactions described in. the pleadings, and the actions of such purported agent were not binding on it and consequently the judgment was erroneously rendered against it, and it is entitled to have the judgment reversed and final judgment entered in its favor."

Judge Crow in his dissenting opinion in the case says in part:

"Finally, if as the majority opinion declares, the congregation did not exist in law and therefore was not suable, it did not become so by virtue of the suit nor in any other manner, and consequently could not have commenced this proceeding in error. Wherefore the judgment of the court below as to it was wholly void, and the attempted judgment of reversal in this case is likewise void though the nullity there as here may be harmless in all directions."

While it may be pointed out that respondent in the answer admitted that a request was made by relator, it should be noted that the evidence introduced by relator's own witnesses indicated that no meetings of the association had been had since June 4th and there is concerning that meeting no record other than a somewhat informal recitation that it was decided to hold over present officers until later and to sponsor a W.P.A. garden project, and a letter to respondent saying the P.T.A. "requests the use of the new building for its meetings. Will you approve this request at your next meeting," and signed by "Mrs. Earnest Sowers, Sec. of Richland P T.A., Allensville, Ohio."

In view of the peculiar distinctions between a corporation and an association in that the latter is responsible

only through its members who incur a liability, this court doesn't feel that such evidence establishes as an actionable fact a request made by the association. And the evidence fails to disclose, but rather disproves any meeting of the association subsequent thereto and prior to the institution of this suit. Nor does the admission of a request in the answer of respondent waive this defect where the disproving evidence is brought out by the party benefitted by an admission and there appears no element of estoppel to prevent the other party from relying upon a fact thus established contrary to his admission.

"A judicial admission is conclusive on the party by whom it was made or to whom it is attributable, unless the declarent is relieved from the effect thereof by reason of it having been made under a mistake of fact; but it is not, of course, conclusive on the court. Otherwise a court might be forced by parties to decide moot, feigned, and collusive cases, or a chancellor might be made to proceed with an equitable accounting between partners who had stolen the property they brought into court. 22 Corpus Juris 505 on Evidence and foot note. Citing Larson Jr. Co. v Wm. Wrigley, Jr. Co., 253 Fed. 914, 916."

"But it has been held that where a plaintiff does not rely upon an admission in the answer of an allegation in the complaint, but introduces evidence which has the effect of disapproving his own allegation, defendant is not bound by his admission." Foot note 5 of 22 C. J. §505 of Evidence, citing Dressner v Manhattan Delivery Co. 92, N. Y. S. 300, and see also 23 **Oh St 473.**

In this case a writ of mandamus is sought to enforce an alleged legal right or privilege the granting of which, as seen by §7622-2 **GC,** may reasonably be expected to give rise to financial liability on the part of the grantee. Inasmuch as it appears that the grantee is an association and financially responsible only through its individual members, and the record fails to disclose any action taken by which the members were given an opportunity to vote or declare themselves on the minutes of the records of the association a question arises as to whom the board of education might look for the payment of any damage or ordinary expense that may arise, or as to the identity of the parties responsible.

"The action must be against those of the unincorporated association who incurred the obligation or authorized it or ratified it; and not against the other members or officers." **Devoss v Gray, 22 Oh St 159.** See also 3 O. Jur. supra, and **Higdon v Gardner, 3 O. C. C. 340.**

Without extending the discussion of this phase of the case further, it is the opinion of the court that in an action in mandamus where it is sought to secure from the trustees of public property the use thereof as a matter of right and the grant of such use may give rise to financial responsibility or liability on the part of the grantee of such use, the court is unwarranted in issuing a writ of mandamus where it does not appear that applicant is a legal entity and the record fails to identify with reasonable certainty those to whom such trustees may look in the event of loss or damage as a result of such use being granted to the applicant. The trustees of such public property may not be placed in a position requiring them to speculate upon, guess or imply a liability for financial responsibility contemplated in the statutes under which their duty is sought to be enforced in an action in mandamus. To grant the writ in such cases would be to disregard the requirement of showing a clear legal right thereto.

However, the court does not choose to base its decision solely upon the question of relators' capacity to sue and the ability of respondent to enforce liability in event of loss, expense

392

or damage. The action at bar calls for the construction of §7622-1 GC. The respondent in this case would appear to have an exaggerated conception of its discretion and authority under this and related code provisions. The legislature of Ohio has, within certain limitations, both the power and authority to govern the use of public property. Relator, on the other hand, seems to have interpreted what the legislature has said in §7622-1 GC, as divesting the board of education of any discretion in selecting or setting aside for use property or parts thereof when requested for a definite property or part thereof. The evidence in this case establishes that the Parent Teachers Association meetings had been held in what is now termed the old school building which is adjacent to the new school building. That the use of the old building has never been denied and is not now denied to the relator, and that other organizations and groups are still using it for the purpose of programs, meeting place, holding dinners, etc., where the attendance is in excess of one hundred people. The respondent through its individual members on the witness stand has indicated a willingness to grant the use of the more spacious quarters in the new school building when and if same should be required by a special program so long as it can be arranged without interference with the school program and its use of said quarters. The respondent, with the exception of one member has expressed a feeling or belief that in its opinion the grant of use of the new school building to this or any other group would interfere with the school program and react adversely to the proper administration and morale of the school. The record of the case so far as I can find does not discredit the sincerity or correctness of this expressed belief, and no discrimination or abuse of discretion is established such as would warrant disturbance of the respondents judgment upon the state of this record.

The court does not hold that a Parent Teachers Association has no right to meet in or use school or other public property. This is not a case of absolute and unqualified refusal. Considerable research by counsel and the court has failed to disclose any case in Ohio similar to the one at bar in that respondent offers to furnish a meeting place and relator insists upon a different one from that granted.

The section here in question, §7622-1 GC, indeed contemplates the right to use public property when application therefore is properly made, and such use will not seriously infringe upon the ordinary and intended use thereof. The legislature meant to make available a meeting place for organizations and persons and not to divest the legal trustee or custodian of properly exercised discretion in selecting a reasonable meeting place from among several available and adequate places under its control. The board of education in this case, having made avail- able an adequate meeting place in the school house immediately adjacent to the building demanded, has complied with the mandatory requirements of the legislature.

The writer feels that one other important element in the case should not go without mention in this opinion. There is no allegation or proof in this record that the new school building might be used without seriously infringing upon the original and necessary use of said building, in other words there is neither allegations or proof that respondent can legally grant the request. Indeed the alleged application fails to refer to any specific time or times when the new building was wanted as a meeting place. Nor is there any evidence of an effort being made to learn whether any specific times were, in coordination with the school program, available for its use by the public. Indeed some one or more of the members of the board who ruled on the matter expressed their opinion that the new building was so taken up that it would be impossible to grant its use to others without a conflict with school activities.

"To invoke extraordinary writ of mandamus and to control action of public officials, it is necessary that there be pleaded and proved the facts upon which the relators right depends." **Circleville Board of Education v State ex Moody,** 6 Abs 365.

"Mandamus will be denied if the facts stated in the petition do not constitute a cause for action." **Dague v Industrial Commission, 110 Oh St 662.**

"Relator must show himself legally and equitably entitled to the right, that it is legally demandable from defendant, and that such person has it still in his power to perform; also relator must affirmatively show performance of whatever is required of him as a condition precedent. The petition must set forth clearly and distinctly all the facts showing a right to the relief sought." Bates Pleading, Practice, Parties and Forms, Fourth edition Section No. 1953, page 1753; **State v Winans, 1 Dayton Term Rep. 72;** College v La Rue, 22 Oh St 469; Dye, Aud. v State ex rel Davis, 73 Oh St 231.

It is the conclusion of this court that in an action for mandamus where it is sought to compel a board of education to grant the use of a school building for a meeting place there should be pleaded and proved a request of such definite nature as to the time of proposed meetings as will enable the said board to determine whether or not the granting of such request would seriously infringe upon the regular school activities conducted in said property, and in this case such failure of allegation and proof amounts to failure to allege and prove legal ability on the part of respondent to do the thing requested, and a writ of mandamus should be and is denied.