**FEINMAN v. A. H. BULL S. S. CO.**
Civ. A. No. 11518.

United States District Court
E. D. Pennsylvania.
Sept. 30, 1952.

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw, Philadelphia, Pa., for defendant.

CLARY, District Judge.

Plaintiff herein, Samuel Feinman, brought this action for injuries sustained by him on the evening of November 4, 1948 while he was working in the No. 1 hold of the S.S. Angelina, the property of the defendant. The vessel at the time of the accident was lying at the pier of the Sun Shipbuilding and Dry Dock Company at Chester, Pennsylvania, and employees of that company were engaged in making repairs to the vessel. Plaintiff, an electrician, was working in the No. 1 hold and in some manner one of the hatch strong beams became dislodged, fell into the hold, and

caused the injuries complained of by the plaintiff in this action. A verdict was rendered in favor of the defendant and the plaintiff has moved for judgment in his favor on the entire record or, in the alternative, for a new trial.

The plaintiff in his motion for judgment in his favor, notwithstanding the verdict, contends that under the evidence it was shown that the purpose of hatch beam locks is to secure the beam and prevent it from becoming dislodged; that if the beam is locked in place then it is secured against being dislodged, and unless the defendant explains how the accident happened or what condition existed which permitted the beam to be lifted out of its slot so that it could fall below, the vessel has breached its obligation to provide the plaintiff with a safe place to work and the Court should declare as a matter of law that plaintiff is entitled to a verdict. This argument ignores the realities of the situation. Plaintiff's theory of the case, and he produced direct testimony in support of it, was that one of the hatch beam locks was broken; that the defendant, through an Officer, refused permission to have the hatch beam removed in the interest of safety, and that because of this broken lock the accident happened. The jury was specifically directed to return a verdict for the plaintiff if it found that testimony to be true. A preponderance of the evidence was clearly with the defendant on this aspect of the case. The testimony of several qualified individuals was to the effect that the original hatch beam holders and beam locks of the S.S. Angelina were still in place on both the date of the accident and the date of trial; that none of them had ever been damaged, and that they were still in good operating condition on the date of trial. There was clearly a question of fact which had to be submitted to the jury and consequently the Court could not as a matter of law direct the jury to find in favor of the plaintiff.

The second point raised is that the Court erred in its charge to the jury. The principal complaint is that the Court permitted the jury to determine whether the accident was caused by improper handling of adequate and safe appliances by employees of the Sun Shipbuilding and Dry Dock Company. The complaint in this case alleged that the defendant owned, possessed, managed, operated and controlled the S.S. Angelina. This allegation was admitted by the defendant in its answer and the averment and admission were read into evidence at the time of the trial. The defendant could do no less. The evidence was uncontradicted that although the ship was at a shipyard for repairs, a temporary night mate was aboard the ship and in general charge of the ship for the owners. The owner's Superintendent of Repairs was also aboard the ship, but the evidence discloses that he was not at or near No. 1 hold at the time of the accident. One witness for the plaintiff testified that the mate had been in the vicinity of the No. 1 hold and had refused plaintiff's coworker's request for permission to remove a hatch beam and lock which had been broken. This testimony the jury did not believe since, as stated above, the jury was instructed to return a verdict for the plaintiff if this testimony were true. The Court permitted the jury to consider whether the sole cause of the accident was not the acts of employees of the Sun Shipbuilding and Dry Dock Company in the following language:

"I have said to you that the ship must supply a safe and seaworthy vessel and supply and keep in order appliances and equipment appurtenant to the ship, and that includes beams and beam sockets and slots and locks. That is the duty of the ship. Failure to do that would render the vessel unseaworthy, and if someone is injured as the proximate result of that failure—and that broken slot would be a failure to do it— then, in that case, the ship would be responsible to an injured person. I am also now instructing you that if the shipowner—that is the Bull Company in this case—surrendered control of the Number 1 hatch to the shipbuilding company, and at that time the ship was seaworthy and there were no defective or broken appliances, and, if thereafter, because of the improper handling of

adequate and safe appliances by the employees of the Sun Ship Company, the beam was caused to fall, then there is absolutely no liability on the ship and your verdict should be for the defendant."

■ Plaintiff argues that the unqualified admission by the defendant in paragraph 3 of the complaint that the defendant "owned, possessed, managed, operated and controlled" the vessel precludes the Court from submitting any question of partial control of a section of the vessel by the Sun Shipbuilding and Dry Dock Company to the jury. Ordinarily, when an admission is treated as a matter of pleading excusing the pleader's opponent from offering evidence on the point admitted, the admission is necessarily conclusive as to the fact admitted, but it does not preclude the party making it from proving other independent facts in avoidance of those admitted. 41 American Jurisprudence, Section 201.

Wigmore On Evidence, Third Edition, Vol. 9, Section 2590, contains the following language:

"The vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, i. e. the prohibition of any further dispute of the fact by him, and of any use of evidence to disprove or contradict it. In view, however, of the commendable purpose which leads (or ought to lead) to the voluntary making of admissions, it is always and properly said that the trial Court may in discretion relieve from this consequence."

Citing L. P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., 7 Cir., 253 F. 914.

It would certainly be inequitable under the facts of this case as developed at the pre-trial and trial not to permit the jury to find as a fact that only employees of the Sun Shipbuilding and Dry Dock Company were working in the No. 1 hold at the time of the accident. Insofar as defendant was concerned, this was an unreported accident, the defendant not learning about the accident until shortly before suit was filed. There was no entry in the ship's log of the fact of the accident nor was there any evidence that the matter had been brought to the defendant's attention by either the plaintiff, his representatives, or the Dry Dock Company until long after the happening of the occurrence. Plaintiff's counsel was apprised at the pre-trial of the position of the defendant respecting the happening of the accident, its theory of the case, and its proposed defense to the claim. The defendant's objection to the above-quoted portion of the charge for the first time raised the precise question now before me. There is no doubt that in the full general sense of the word "control" by virtue of the presence of the mate and the Superintendent of Repairs, the Bull Company was in control of the vessel. The vessel was in the shipyard for repairs. Sun Shipbuilding and Dry Dock Company was an independent contractor. All equipment, rigging, and supplies used in the ship repair was the property of the Sun Shipbuilding Company. Only drydock employees were engaged at work in the No. 1 hold with their own supervisors. None of the ship's officers or crew were engaged in the repair work. 18 C.J.S., page 28 refers to "control" as a comprehensive term, of well understood meaning, having various significations and subject to different limitations, but having no legal or technical meaning distinct from that given in its popular acceptance. It defines "control" as the power to govern, dominate, direct or supervise in some respect the conduct of another, the extent or degree of dominion depending upon the circumstances of the particular case.

■ 2 American Jurisprudence Agency, Sec. 8, in discussing independent contractors says:

"An independent contractor may be distinguished from an agent in that he is a person who contracts with another to do something for him, but who is not controlled or subject to the control of the other in performance of such contract but only as to the result."

An analysis of the above-stated principles of law appears to signify two types of control; a general overall control in one party, in this case the shipowner, who has the

authority to and does determine what must be done; and a special control in that the party selected to do the work may do it by means uncontrolled by the person engaging him to perform it, but still subject to final approval of the one ordering the work to be done. Plaintiff's contention in this case would eliminate any examination of the surrounding circumstances connected with the admission of control. His theory is that the admission in this case made by the defendant connotes "exclusive control". This contention again ignores the realities of the situation in that if I were to adopt his contention, I would in effect be changing the status of the Sun Shipbuilding and Dry Dock Company and its employees from that of independent contractor to employee. That I cannot do. The opinion of Circuit Judge Kalodner, sitting specially in this district, in Osnovitz v. United States, D.C., 103 F.Supp. 238, denied a recovery to a stevedore injured on a vessel in a case wherein the contention advanced as to the liability of the vessel was analogous to the present situation. In that case the libellant contended that the stevedore never assumed control of any part of the vessel, since there were members of the ship's crew and other shoreside personnel on board during the entire operation. Judge Kalodner said, 103 F.Supp. at page 241:

"I cannot subscribe to this contention. While it is true that, once inside the ship's icebox, the stores were stowed at the direction of a member of the vessel's crew, they were brought aboard—from the dock to the icebox door—under the direction of the stevedore foreman. It was his job to decide over what portion of the deck they should be carried; it was his responsibility to provide a safe route for the men who carried them. Therefore, libellant's only recourse, if any, is to proceed against his employer under the terms of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq."

■ We have here a case of a ship in a shipyard placed there specifically for the purpose of making it seaworthy and to pass its annual inspection. The evidence disclosed that the inspection of the hull and the boilers which started on the 2nd of November and was completed on the 5th included an inspection of the instrumentalities here involved. The Coast Guard Inspector, Commander H. W. Schofield, testified directly that there were no defects in the hatch beam sockets and locks. There is no contention that the ship's officers and crew took part in any direct activity in connection with the repairs being accomplished. Certainly no liability should attach to the defendant if the dangerous condition, the cause of the accident, was created by workmen of the Sun Shipbuilding and Dry Dock Company. See Restatement of Torts, Section 355, 356. Many cases have held that an employee of a contractor brought on board ship to repair a condition there existing could not recover where he was injured by an unsafe condition "when the very work in which the servant is engaged makes it unsafe". See Byars v. Moore-McCormack Lines, 2 Cir., 155 F.2d 587, 588; Bruszewski v. Isthmian Steamship Company, 3 Cir., 163 F.2d 720.

■■ I hold, therefore, that the admission by the defendant of general control of the vessel as alleged in the complaint did not, as now contended for by the plaintiff, admit "exclusive control" so as to preclude defendant from showing that insofar as hatch beams and locks in the No. 1 hold were concerned, they were in a good and seaworthy condition when turned over to the shipyard employees. Therefore, it was not error for the Court to charge that if the proximate cause of the accident was the misuse of seaworthy facilities by the employees of the Shipbuilding Company, no liability could or should attach to the defendant.

Several other questions are raised as to the admission of medical evidence. These relate only to the question of damages. Since the jury did not reach that point in its deliberations, they will not be commented upon in this opinion. However, they have been examined and I find no error in such admissions.

An order will be entered discharging plaintiff's alternative motion for judgment in his favor and/or for a new trial.