# COMPUDYNE CORPORATION
## v.
## MAXON CONSTRUCTION COMPANY, Inc.
### Civ. A. No. 34254.

United States District Court
E. D. Pennsylvania.
Nov. 30, 1965.

Wexler, Mulder & Weisman, Horace A. Stern, Wolf, Block, Schorr & Solis-Cohen and Michael Temin, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., and Sullivan Cistone, Philadelphia, Pa., for defendant.

K. D. McCasland, Oak Ridge, Tenn., for Atomic Energy Commission.

DAVIS, District Judge.

This is an action for breach of contract, but it is now before the court on the defendant's motion for summary judgment or for dismissal.

In April 1960, the United States through the Atomic Energy Commission entered into a contract with the defendant Maxon Construction Company for the construction of a nuclear power plant in Puerto Rico. In September 1961, Maxon entered into a contract with the plaintiff, Compudyne Corporation, whereby the latter agreed to furnish certain supplies in furtherance of the defendant's contract with the Atomic Energy Commission. This contract is identified as Purchase Order No. C–99–330.

In two letters to the plaintiff dated July 1, 1963, the defendant set forth with specificity the nature of the plaintiff's noncompliance with Purchase Order and requested that the plaintiff submit a proposed plan of compliance by July 8, 1963.

On July 18, 1963, in another letter to the plaintiff, the defendant stated that since the plaintiff had failed to submit a plan for compliance as requested in the letters of July 1 and had remained in default, it was terminating the contract by invoking Section 13 of Article II of

Purchase Order No. C–99–330, entitled "Default". A telegram from the defendant to the plaintiff on July 29, 1963 confirmed this decision to abrogate the Purchase Order.

On August 13, 1963, the plaintiff, which was then engaged in proceedings for an arrangement under Chapter XI of the Bankruptcy Act, wrote to the defendant and re-affirmed its contention, as it had previously, that no default existed. It then asserted that this letter constituted the invocation of procedures under the disputes clause of the Purchase Order between the plaintiff and the defendant. That clause provided for arbitration of factual disputes under the contract.

As a result, on September 4, 1963, the Contracting Officer under the Purchase Order requested that the plaintiff submit within 30 days a statement of its position regarding the defendant's termination of the contract for default, together with any relevant documents and other data.

Almost a month later, however, in a letter dated October 2, 1963, counsel for the receivers of the debtor plaintiff's estate advised the Contracting Officer under the Purchase Order that an action for breach of contract had been instituted against the defendant in the United States District Court for the Eastern District of Pennsylvania and asked that the contracting officer's request for information be held in abeyance.

## I

■ The defendant has first of all contended that under the facts of this case the plaintiff has no standing to bring this action for breach of contract in any court before exhausting his administrative remedies pursuant to the "Disputes Section" of Purchase Order No. C–99–330.

The "Disputes Section" of the contract provides:

"(a). Except as otherwise provided in this Order, any dispute concerning a question of fact arising under this Order, which is not disposed of by agreement, shall be decided by the Contracting Officer of the Company's Contract No. AT–(40–1)–2696 with the Government, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof, together with specific findings of fact and a copy of the Commission's "Rules of Procedure in Contract Appeals" to the Company and the Seller. The decision of the Contracting Officer shall be final and conclusive unless within thirty days from the date of receipt of such copy, the Seller mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Commission. The decision of the Commission shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not, supported by substantial evidence. In connection with any appeal proceeding under this paragraph, the Seller shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder and if performance has not been completed, the Seller shall proceed diligently with the performance of the Order and in accordance with the Company's instructions."

The plaintiff does not deny its failure to abide by the disputes section in the contract and admits that there is conflicting authority as to whether the disputes clause applies to any question of fact that arises after completion or termination of the contract. In support of its position that the disputes clause does not apply in this situation, the plaintiff relies on E. I. Du Pont De Nemours & Co. v. Lyles & Lang Construction Co., 219 F.2d 328, 333 (4th Cir. 1955); United States v. Duggan, 210 F.2d 926 (8th Cir. 1954); United States v. Heaton, 195 F.Supp. 742, 745 (D.Neb.1961).

All three cases involved contract disputes clauses similar to that involved in the present action and in each the defendant raised, as an issue, the failure of the plaintiffs to submit their dispute to the Contracting Officer pursuant to the contract. All three held that this language applied only to questions of fact that arose during performance and prior to termination, and that since the contract in those cases had been terminated, the clause was not applicable. The rationale of the Duggan case cited by the other two was founded on the final sentence of the disputes clause which stated, "In the meantime the Contractor shall diligently proceed with performance." This language was interpreted to mean that the entire clause referred to the period of performance alone.

At least one case has held to the contrary on this question whether a standard disputes clause applied to factual issues involved after the completion or termination of the contract. In Silverman Brothers, Inc. v. United States, 324 F.2d 287 (1st Cir. 1963), the court was faced with the issue as to whether the government's justification in terminating the contract was outside the scope of the disputes clause since it arose "out of and after the termination of the contract." While recognizing that there might be cases to the contrary, the court stated without further elucidation:

> "[W]e prefer to follow the holdings in the Second Circuit that the disputes clause includes any dispute concerning a question of fact arising under the contract whether it arises during performance of the contract or after its completion. Moran Towing & Transportation Co. v. United States, 192 F.Supp. 855 (S.D.N.Y.1960), appeal dismissed, 290 F.2d 660 (2d Cir. 1961). See also Allied Paint & Color Works, Inc. v. United States, 309 F.2d 133 (2d Cir. 1962), cert. denied, 375 U.S. 813, 84 S.Ct. 41, 11 L.Ed.2d 48 (1963); United States v. Hamden Co-operative Creamery Co., 297 F.2d 130 (2d Cir. 1961)."

This court deems it proper to follow the line of authority of the Duggan, DuPont, and Heaton cases cited above that require the exhaustion of administrative remedies only when the factual question arises during the performance of the contract.

The most logical reading of the language of the disputes clause of the contract itself compels this result. The opening sentence asserts "Except as otherwise provided in this Order, any dispute concerning a question of fact *arising under this order*, which is not disposed of by agreement, shall be decided by the Contracting Officer. * * * " (Emphasis added.) Once the contract has been terminated as occurred here, it no longer exists and there can be no "factual dispute" under it. The concluding sentence of the clause confirms this interpretation. It reads "Pending final decision of a dispute hereunder and if performance has not been completed, the Seller shall proceed diligently with the performance of the Order and in accordance with the Company's instructions." These words clearly connote a situation where the order is still in effect, for performance cannot possibly be completed once the contract is terminated. In addition, there is no hint whatsoever from the remainder of the disputes clause that it encompasses factual issues that exist after the contract ceases to exist.

Secondly, the purpose of the disputes clause is to expedite performance of the contract and to avoid initial resort to the courts with the resultant delay, expense, and likely aggravation of damages. Determination of factual disputes by the Contracting Officer can often lead to a quick and satisfactory resolution of issues and the completion of the contract with a minimum of lost time and money. However, once the contract has been terminated pursuant to its termination clause, the duties of the parties to perform have come to an end. No longer is there any need for a quick resolution of issues since one party, relying on a contractual provision, has discharged the

other of any responsibility. While the discharging party may still be liable in damages for breach of contract, the position of the parties is fixed and the terminating party is free to find someone else to complete the contract. A disputes clause is designed to expedite the completion of a contract, but once the parties have come to the point where one has terminated the contract, no useful purpose exists to hold things in abeyance since a decision of the Contracting Officer in favor of the non-terminating party does not re-institute the contract under any of its provisions that this court has read. Consequently, where the contract has been terminated [1] the rationale of the disputes clause ceases to exist.

## II

■ The defendant also contends that the United States of America is the real party in interest. If the defendant's contention is valid and the government is the proper party defendant, this court is without jurisdiction over the subject matter since any contract action against the United States for an amount in excess of $10,000 must be heard in the Court of Claims pursuant to 28 U.S.C. §§ 1346(a) (2) and 1491.

In support of its contention that it was the disclosed agent of the government the defendant relies on Purchase Order, No. C–99–330 and specifically on Section 2.

*Title and Administration* of Article II, GENERAL TERMS AND CONDITIONS which contains broad language that the contract was "entered into by the Company for and on behalf of the Government." [2]

Despite this broad language in the contract between Maxon and Compudyne, the essential relationship for this Court's consideration is that between Maxon and the Atomic Energy Commission acting for the United States. The contract between these two entities is a very detailed expression of their rights and duties, and does in many ways severely restrict the rights of Maxon to act without Commission approval.

Nevertheless, it should be remembered that the company was to build an atomic energy plant for the government and with such a project, it is inconceivable that the A.E.C. would not exert a certain amount of control due to the great national interest involved. Yet, its control was not complete. Maxon was to use its own skill and knowledge to build this intricate structure for the United States. It was also a separate entity in no way owned or operated by the government and was paid for this work in monthly installments on the basis of 90% of the fixed fee with the remainder upon satisfactory completion of the project. These factors lead the Court to conclude that Maxon was an independent contractor

---

1. The defendant's reliance on United States v. Joseph A. Holpuch, 328 U.S. 234, 66 S.Ct. 1000, 99 L.Ed. 1192 (1946) is misplaced, for in that case the contract had not been terminated.

2. This provision of the Order states in full: "It is understood and agreed that this Order is entered into by the Company for and on behalf of the Government; that title to all supplies furnished hereunder by the Seller shall pass directly from the Seller to the Government, as purchaser, at the point of delivery; that the Company is authorized to and will make payment hereunder from Government funds advanced and agreed to be advanced to it by the Commission and not from its own assets, and administer this Order in other respects for the Commission, unless otherwise specifically provided for herein; that administration of this Order may be transferred from the Company to the Commission or its designee, and in case of such transfer and notice thereof to the Seller the Company shall have no further responsibilities hereunder; and that nothing herein shall preclude liability of the Government for any payment properly due hereunder if for any reason such payment is not made by the Company from such Government funds."

and not a disclosed agent of the United States.[3]

Furthermore, the government agreed to become liable to sub-contractors only if it terminated the contract with Maxon. The contract, however, was terminated by Maxon and the rights and liabilities of the parties to this action became fixed at that time. The subsequent assignment of the agreement to the government does not substitute the latter as the defendant. If anything, the provision in the contract between Maxon and the A.E.C. for the assignment of Maxon's subcontracts to the commission demonstrates the lack of an agency relationship between these parties.

This view that Maxon is an independent contractor is supported by E. I. Du Pont De Nemours & Company et al. v. Lyles & Lang Construction Company, 219 F.2d 328 (4th Cir. 1955). There the defendant Du Pont Company had a contract with the Atomic Energy Commission for the construction of the Savannah River project. The plaintiff, Lyles & Lang Construction Company, a subcontractor of Du Pont, brought suit against it for breach of contract. Upon the plaintiff's recovery of a judgment below, the defendant appealed, raising as one ground of error the trial court's refusal to join the United States as a party to the action. The Court affirmed the lower court on this point and concluded:

> "The contract of plaintiff was with defendant, not with the United States, and defendant in making it was acting as an independent contractor, not as an agent of the government. * * * Before the

assignment had been made the contract had been terminated by the defendant, plaintiff's right to recover under its provisions had become fixed, [and] suit had been instituted for recovery * * *. Substitution of the United States as a defendant might well have ousted the court of jurisdiction, since the amount sued for was greater than allowed by the Tucker Act, 28 U.S.C. § 1346." [4]

In United States v. Boyd, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964), the Supreme Court was faced with a similar relationship where two private corporations had contracts with the Atomic Energy Commission to operate and to perform certain services at the Oak Ridge Plant. There the issue was whether these two companies were liable for the Tennessee use tax or whether they came within the umbrella of governmental immunity. The court held the tax valid and rejected the notion of agency. While recognizing that the Commission "retains the right to control, direct and supervise the performance of the work and has issued directions and instructions governing large areas of the operation," that government money was used for purchases, and that title to any property purchased immediately passed to the government, the Court emphasized that the companies exercised their skill and managerial discretion under the contracts, maintained a considerable number of their own employees, and had a great deal at stake in the operation from a profit standpoint. As, in Boyd, this court cannot say that Maxon was "so assimilated by the Government as to become one of its constituent parts." [5]

---

3. See United States v. Boyd, 378 U.S. 39, 42, 48, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964).
   In Feinman v. A. H. Bull S.S. Co., 107 F.Supp. 153, 155 (E.D.Pa.1952), aff'd 216 F.2d 393 (3rd Cir. 1954), the Court stated, "An independent contractor may be distinguished from an agent in that he is a person who contracts with another to do something for him, but who

is not controlled or subject to the control of the other in performance of such contract but only as to the result."

4. P. 332 of the Opinion.

5. P. 47 of the Opinion, 84 S.Ct. 1518. See also United States v. Township of Muskegon, 355 U.S. 484, 486, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958).

### III

Finally, the defendant contends that the plaintiff's action is premature and that its complaint fails to state a claim upon which relief can be granted. Both are without merit and do not require discussion.

### ORDER

And now, this 30th day of November 1965, after oral argument and upon consideration of the briefs, the defendant's motion for summary judgment or in the alternative for dismissal is denied.

